UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**LAWRENCE HAUSER,**

        **Plaintiff,**

**v.**                                    **Case No:  6:19-cv-1150-Orl-41EJK**

**STEWARD MELBOURNE HOSPITAL,
INC. and STEWARD HEALTH CARE
SYSTEM, LLC,**

        **Defendants.**
_____/

## ORDER

THIS CAUSE is before the Court on Defendants' Motion to Dismiss ("Motion," Doc. 6) to which Plaintiff filed a Response in Opposition ("Response," Doc. 16). For the reasons stated herein, the Motion will be granted.

## I.    BACKGROUND

This case arises from a putative class action Complaint filed by Plaintiff, who alleges that he received medical treatment at Defendant Steward Melbourne Hospital, Inc.'s[1] ("Melbourne Hospital") emergency room. (Compl., Doc. 1-1, at 2–3). According to Plaintiff, Defendant Steward Health Care System, LLC ("SHCS") is the alleged owner and operator of Melbourne Hospital and two other hospitals in Florida. Plaintiff alleges that both Defendants failed to disclose an emergency room facility fee ("ER Facility Fee") to Plaintiff and other patients prior to treatment. (*Id.*).

---

[1] According to Plaintiff, Steward Melbourne Hospital, Inc. does business as Melbourne Regional Medical Center. (Doc. 1-1 at 3).

Plaintiff originally filed his Complaint in state court, and Defendants timely removed the case here pursuant to the Class Action Fairness Act, 28 U.S.C. §§ 1332(d), 1453. (Notice of Removal, Doc. 1, at 1–2). Plaintiff's two-count Complaint alleges a cause of action pursuant to the Florida Declaratory Judgment Act ("FDJA"), Fla. Stat. § 86.011, and a cause of action pursuant to the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 *et seq.* (Doc. 1-1 at 10–13). Regarding the class claims, Plaintiff seeks to certify a class defined as: "All individuals who, subsequent to May 1, 2017, received treatment at a Florida hospital operating under the Steward Health Care brand, and were billed an emergency room facility fee . . . in addition to the charges for the individual items of treatment/services provided," with exclusions. (*Id.* at 8).

Defendants move to dismiss on Article III standing grounds and pursuant to Federal Rule of Civil Procedure 12(b)(6), and Plaintiff opposes.

## II.    ARTICLE III STANDING

Article III standing is a threshold inquiry, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998), so the Court will address it first. Defendants bring their Motion pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. However, in the Eleventh Circuit, "[a] motion to dismiss for lack of standing is properly brought under Federal Rule of Civil Procedure 12(b)(1)." *Radenhausen v. USCG*, No. 3:13-cv-268-J-39JRK, 2014 U.S. Dist. LEXIS 198128, at *10 (M.D. Fla. Feb. 13, 2014) (citing *Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1242 (11th Cir. 2003)); *Parrales v. Dudek*, No. 4:15cv424-RH/CAS, 2015 U.S. Dist. LEXIS 189205, at *11 (N.D. Fla. Dec. 24, 2015). Therefore, Defendants' Article III standing argument will be considered under the Rule 12(b)(1) legal standard.

### A.      Legal Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss the claims against it for "lack of subject-matter jurisdiction." "Attacks on subject matter jurisdiction . . . come in two forms: 'facial attacks' and 'factual attacks.'" *Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1260–61 (11th Cir. 1997) (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990)). Here, Defendants assert a facial attack to standing. "Facial attacks challenge subject matter jurisdiction based on the allegations in the complaint, and the district court takes the allegations as true in deciding whether to grant the motion." *Morrison v. Amway Corp.*, 323 F.3d 920, 925 n.5 (11th Cir. 2003).

### B.      Article III Standing Analysis

In order to bring a case in federal court, a plaintiff must establish standing under Article III of the United States Constitution. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559–60 (1992). To establish Constitutional, or Article III, standing, a plaintiff must show: "1) that he personally has suffered an actual or prospective injury as a result of the putatively illegal conduct; 2) that the injury can be fairly traced to the challenged conduct; and 3) that the injury is likely to be redressed through court action." *Saladin v. City of Milledgeville*, 812 F.2d 687, 690 (11th Cir. 1987).

Defendants argue that Plaintiff lacks standing to assert "[c]laims involving hospitals other than the hospital at which Plaintiff was treated." (Doc. 6 at 7). In response, Plaintiff points out that he "is not asserting claims against the two unnamed hospitals to which Defendants are referring." (Doc. 16 at 11).

Plaintiff is correct that the only named Defendants are Melbourne Hospital and SHCS. (Doc. 1-1 at 2). Defendants do not challenge Plaintiff's standing against them, and the Court does not see any reason to do so as standing against the current Defendants is obvious from the face of

the Complaint. As to the two unnamed hospitals, Plaintiff does not allege that he was injured at those other hospitals, nor does he appear to assert class claims based on an injury caused by those other hospitals. Rather, Plaintiff challenges SHCS's policies, as the owner and operator of those hospitals, that may have resulted in injuries. The Court is satisfied that Plaintiff has standing when the claims against SHCS are couched in this manner.

### III.     RULE 12(b)(6) MOTION

#### A.     Legal Standard

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." In determining whether to dismiss under Rule 12(b)(6), a court accepts the factual allegations in the complaint as true and construes them in a light most favorable to the non-moving party. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1269 (11th Cir. 2009). Nonetheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Furthermore, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Generally, in deciding a motion to dismiss, "[t]he scope of the review must be limited to the four corners of the complaint." *St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002).

### B.    FDUTPA Claim

Plaintiff asserts a cause of action pursuant to FDUTPA, which makes illegal "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). Under FDUTPA, a Plaintiff must prove three elements to succeed on a claim for damages: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Id.* (quoting *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006)). However, FDUTPA also contains a so-called "safe harbor" provision, whereby FDUTPA does not apply to "[a]n act or practice required or specifically permitted by federal . . . law." Fla. Stat. § 501.212(1); *Kuenzig v. Hormel Foods Corp.*, 505 F. App'x 937, 939 (11th Cir. 2013). "The safe-harbor provision applies to acts that are required or permitted not only by statutes but also by regulatory action." *Pye v. Fifth Generation, Inc.*, No. 4:14cv493-RH/CAS, 2015 U.S. Dist. LEXIS 128594, at *7–8 (N.D. Fla. Sep. 23, 2015) (citations omitted). The purpose of the safe harbor provision "is obvious: it would be unacceptably inconsistent for one statute to penalize conduct mandated elsewhere." *Office of the Attorney Gen., Dep't of Legal Affairs v. Commerce Commercial Leasing, LLC*, 946 So. 2d 1253, 1259 (Fla. 1st DCA 2007).

Here, Defendants assert that federal law requires hospitals to establish, update, and make public a list of the hospital's standard charges. Defendants contend that they have complied with this law and its implementing regulations, including the act of disclosing their ER Facility Fees on the internet in the required format. Therefore, Defendants argue, they fall within FDUTPA's safe harbor provision because their disclosure of the ER Facility Fee is an act or practice required by federal law. Plaintiff's counter argument, which is nearly devoid of citation to any relevant legal authority, essentially asserts that the disclosure required by federal law does not require enough of

Defendants and that Defendants are in violation of FDUTPA for failing to do more than is required by federal law.

Federal law requires "[e]ach hospital operating within the United States" to annually "establish (and update) and make public (in accordance with guidelines developed by the Secretary[2]) a list of the hospital's standard charges for items and services provided by the hospital." 42 U.S.C. § 300gg-18(e).

In 2014, the Centers for Medicare and Medicaid Services ("the Agency"), an agency within the U.S. Department of Health and Human Services, published a proposed rule and subsequently a final rule, providing guidelines for implementing § 300gg-18(e). 79 Fed. Reg. 27977, 28169 (May 15, 2014) (proposed rule); 79 Fed. Reg. 49853, 50146 (Aug. 22, 2014) (final rule). The guidelines require "that hospitals either make public a list of their standard charges (whether that be the chargemaster itself or in another form of their choice), or their policies for allowing the public to view a list of those charges in response to an inquiry." 79 Fed. Reg. at 50146. The rule also states that "hospitals are in the best position to determine the exact manner and method by which to make the list public in accordance with the guidelines," but posting the list on the internet "would be one approach that would satisfy the guidelines." *Id.* Thus, the rule does not dictate the particular form of the list of fees nor the specific method of disclosure but only establishment and making public of a method "for allowing the public to view a list of those charges." *Id.* This is the rule that was in place at the beginning of the proposed class period on May 1, 2017. (Doc. 1-1 at 8).

In 2018, the Agency published another proposed rule related to § 300gg-18(e), noting the Agency's "concern[] that challenges continue to exist for patients due to insufficient price

---

[2] "Secretary" means the Secretary of Health and Human Services. 42 U.S.C. § 201(c).

transparency," including "patients being surprised by facility fees . . . for emergency room visits." 83 Fed. Reg. 20164, 20549 (May 7, 2018) (proposed rule); *see also* 83 Fed. Reg. 32640, 32474 (July 12, 2018) (revised proposed rule); 83 Fed. Reg. 34304, 34394 (July 19, 2018) (revised proposed rule); 83 Fed. Reg. 35704, 36009 (July 27, 2018) (revised proposed rule); 83 Fed. Reg. 37046, 37211–12 (July 31, 2018) (revised proposed rule). The final rule published by the Agency requires, effective January 1, 2019, "hospitals to make available a list of their current standard charges via the internet in a machine readable format and to update this information at least annually, or more often as appropriate." 83 Fed. Reg. 41144, 41686 (Aug. 17, 2018) (final rule). The rule specifically states that the form of the list "could be in the form of the chargemaster itself." *Id.* This is the rule that applies to the proposed class period from January 1, 2019, forward.

Plaintiff's Complaint rises or falls on its challenge to Defendants' disclosure practices regarding the ER Facility Fee. The case of *Brett v. Toyota Motor Sales, U.S.A., Inc.* is instructive to the question of whether Plaintiff's claims can stand in the face of FDUTPA's safe harbor. No. 6:08-cv-1168-Orl-28GJK, 2008 U.S. Dist. LEXIS 114462 (M.D. Fla. Aug. 29, 2008). In *Brett*, Plaintiff asserted putative class claims, alleging that a car manufacturer violated FDUTPA by failing to disclose the actual fuel efficiency of a vehicle in addition to fuel economy estimates calculated by the U.S. Environmental Protection Agency ("EPA"). *Id.* at *4–6. Federal regulations require disclosure of the EPA estimates, *id.* at *19, but the plaintiff wanted the defendant car manufacturer to disclose "an additional, more accurate fuel economy estimate." *Id.* at *21. The *Brett* Court held that the plaintiff's claim was not actionable under FDUTPA because the disclosure of the EPA fuel estimates—without additional disclosures not required by the federal regulation—fell within FDUTPA's safe harbor provision. *Id.* at *21–22. The court in *Brett* also specifically noted that "[t]o permit [the FDUTPA suit to stand] would be contrary to the plain

meaning of FDUTPA and the [applicable] legislative and regulatory scheme." *Id.* at \*22. Several other Florida courts have reached the same result as in *Brett*. *Kuenzig v. Kraft Glob. Foods, Inc.*, No. 8:11-cv-838-T-24 TGW, 2012 U.S. Dist. LEXIS 13414, at \*10–11 (M.D. Fla. Feb. 3, 2012) (dismissing a FDUTPA claim pursuant to the safe harbor provision because the defendant had complied with the applicable federal regulations); *Eirman v. Olde Disc. Corp.*, 697 So. 2d 865, 865–66 (Fla. 4th DCA 1997) (affirming dismissal of a FDUTPA claim pursuant to the safe harbor provision because the defendant complied with disclosures required by the Securities and Exchange Commission).

The instant facts are analogous to *Brett*. Plaintiff does not dispute that disclosure of the ER Facility Fee is regulated by the federal government. (Doc. 16 at 6–7). Rather Plaintiff argues that there is no regulation pertaining to "what a hospital puts in its contracts, or what signage is posted in its emergency room facilities, or what must be conveyed to patients during the registration process." (*Id.* at 7). In essence, Plaintiffs is saying: Yes, Defendants disclosed exactly what they were supposed to disclose in exactly the manner prescribed by federal law and rule, but Defendants should *also* be required to disclose this same information by additional manner and method *not* required by federal law. This is exactly the type of situation that FDUTPA's safe harbor provision contemplates. Here, as in *Brett*, Defendants disclosed the information required by the federal government, but Plaintiff wants additional disclosures. It is clear that the Agency considered the specific concern of how an ER Facility Fee should be disclosed to patients when it promulgated its rules. 83 Fed. Reg. at 20549 (proposed rule) (noting the Agency's "concern[] that challenges continue to exist for patients due to insufficient price transparency," including "patients being surprised by facility fees . . . for emergency room visits"). The Agency then decided the best way for this disclosure to occur. 83 Fed. Reg. at 41686 (requiring "hospitals to make available a list of

their current standard charges via the internet in a machine readable format and to update this information at least annually, or more often as appropriate").

Plaintiff does not dispute that Defendants have complied with the required disclosure of the ER Facility Fee in exactly the manner and method required by the rule[3]—i.e., on the internet in a machine readable format. Plaintiff states in his Complaint that he "is informed" of the specific ER Facility Fees charged by Defendants and lists those charges in the Complaint. (Doc. 1-1 at 5). While it is not abundantly clear from the Complaint how Plaintiff obtained this information, it is clear that Plaintiff has visited Defendants' website for Melbourne Hospital. (Doc. 1-1 at 1 (referring to information obtained "on [Defendants'] website and elsewhere")). Plaintiff's Response clarifies that the information regarding the ER Facility Fees was in fact obtained from Defendants' website. (Doc. 16 at 2, 5–7 (referencing Melbourne Hospital's chargemaster available on the hospital's website); *see also generally* Chargemaster, Doc. 16-1).

To the extent that the website posting of the chargemaster showing the ER Facility Fees could not be gleaned directly from the allegations in the Complaint, the Court will take judicial notice, as requested by Defendants, of the fact that the chargemaster is available on Melbourne Hospital's website.[4] (Doc. 6 at 2 n.1). At the motion to dismiss stage, "[a] district court may take judicial notice of certain facts without converting a motion to dismiss into a motion for summary judgment." *Universal Express, Inc. v. United States SEC*, 177 F. App'x 52, 53 (11th Cir. 2006)

---

[3] Because the previous rule contained less stringent requirements than the new rule, compliance with the more stringent rule also indicates compliance with the less stringent rule.

[4] The chargemaster may be accessed at https://www.melbourneregional.org/melbourne-regional-medical-center-price-list. The Court accessed this website and downloaded the chargemaster on February 5, 2020, at which time the chargemaster appeared to be in substantially the same form as presented by Plaintiff in his Response. The parties do not dispute that this is also the location and form in which the chargemaster was available at the time the Complaint was filed in this case.

(citing *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999)). Specifically, the Court may "take judicial notice of when and where . . . notices and articles were published." *Absolute Activist Value Master Fund v. Devine*, 233 F. Supp. 3d 1297, 1317 (M.D. Fla. 2017); *see also Fla. Evergreen Foliage v. E.I. Dupont De Nemours & Co.*, 336 F. Supp. 2d 1239, 1262 n.21 (S.D. Fla. 2004) (noting that a court may "take judicial notice at any stage of the proceeding of a fact not subject to reasonable dispute and generally known or capable of accurate and ready determination" (citing Fed. R. Evid. 201)). The Court only takes notice of the fact that the chargemaster, in substantially the same form as presented by Plaintiff in his Response, is posted on Melbourne Hospital's website and that the downloadable file can be searched (i.e., is machine readable). This fact appears to be undisputed between the parties. (Doc. 6 at 2 n.1; Doc. 16 at 2, 5–7).

Since disclosure of the ER Facility Fee is clearly regulated by federal law—and disclosure of that fee is the sole basis of this lawsuit—FDUTPA's safe harbor provision applies, and Plaintiff's FDUTPA claim will be dismissed. *Brett*, 2008 U.S. Dist. LEXIS 114462, at *21–22. Defendants have moved for the Court to dismiss the claim with prejudice. Dismissal with prejudice is appropriate here because the Court has determined that Defendants' actions that form the basis of Plaintiff's FDUTPA claim fall squarely within FDUTPA's safe harbor provision. *Kuenzig*, 2012 U.S. Dist. LEXIS 13414, at *11 (dismissing a FDUTPA claim with prejudice when the alleged conduct fell within FDUTPA's safe harbor provision); *Hassid v. Royal Caribbean Cruises, Ltd.*, No. 10-20425-CIV, 2010 U.S. Dist. LEXIS 151135, at *10 n.3 (S.D. Fla. July 7, 2010) ("The dismissal is with prejudice because any further attempts to amend a cause of action barred as a matter of law would be futile." (citing *Rance v. Winn*, 287 Fed. App'x. 840, 841 (11th Cir. 2008))).

### C.    Declaratory Judgment Claim

Plaintiff also asserts a claim pursuant to the FDJA, which "authorizes Florida courts to 'to declare rights, status, and other equitable or legal relations.'" *Bailey v. Rocky Mt. Holdings, LLC*, 889 F.3d 1259, 1264 n.6 (11th Cir. 2018) (citing Fla. Stat. § 86.011). However, the FDJA only functions as a procedural mechanism. *Bailey*, 889 F.3d at 1264 n.6 (citing *Ready v. Safeway Rock Co.*, 157 Fla. 27, 24 So. 2d 808, 809 (Fla. 1946) ("[T]he Declaratory Judgments Act is nothing more than a legislative attempt to extend procedural remedies.")); *see also Coccaro v. GEICO Gen. Ins. Co.*, 648 F. App'x 876, 880–81 (11th Cir. 2016) ("Florida's Declaratory Judgment Act . . . is a procedural mechanism . . . ; it does not confer any substantive rights."). "As a federal court sitting in diversity jurisdiction, [this Court] appl[ies] the substantive law of the forum state, in this case Florida, alongside federal procedural law." *Horowitch v. Diamond Aircraft Indus.*, 645 F.3d 1254, 1257 (11th Cir. 2011) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). Therefore, because the FDJA is procedural, "federal courts construe claims brought under the [FDJA] as seeking relief under the federal Declaratory Judgment Act." *Nationwide Ins. Co. of Am. v. Fla. Realty One, Inc.*, No. 2:19-cv-563-FtM-38MRM, 2019 U.S. Dist. LEXIS 183360, at *4 n.2 (M.D. Fla. Oct. 22, 2019); *Goodbys Creek, LLC v. Arch Ins. Co.*, No. 3:07-cv-947-J-34HTS, 2009 U.S. Dist. LEXIS 137214, at *5 (M.D. Fla. Aug. 11, 2009) (collecting cases and concluding that the Federal Declaratory Judgment Act governs).

The Court therefore construes Plaintiff's declaratory judgment claim as being asserted pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201. "The federal courts are confined by Article III of the Constitution to adjudicating only actual 'cases' and 'controversies.'" *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1346 (11th Cir. 1999) (quoting *Allen v. Wright*, 468 U.S. 737, 750 (1984)). "[T]he Declaratory Judgment Act . . . does not broaden

federal jurisdiction." *Gulf States Paper Corp. v. Ingram*, 811 F.2d 1464, 1467 (11th Cir. 1987), *abrogated on other grounds by King v. St. Vincent's Hosp.*, 502 U.S. 215 (1991). Indeed, Congress explicitly "limited federal jurisdiction under the Declaratory Judgment Act to actual controversies, in statutory recognition of" the Article III limitations on federal judicial power. *Atlanta Gas Light Co. v. Aetna Cas. & Sur. Co.*, 68 F.3d 409, 414 (11th Cir. 1995) (quotation omitted). Accordingly, if a declaratory judgment action fails to meet the Article III case and controversy requirement, it must be dismissed for want of jurisdiction. *See Digital Props., Inc. v. City of Plantation*, 121 F.3d 586, 589 (11th Cir. 1997). Additionally, parties do not have a right to a declaratory judgment, and district courts have the discretion to abstain from exercising jurisdiction over such a claim. *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1330 (11th Cir. 2005) (per curiam) ("The Declaratory Judgment Act is 'an enabling Act, which confers a discretion on courts rather than an absolute right upon the litigant.' It only gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so." (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995))).

Here, the Court has determined that Plaintiff's FDUTPA claim fails as a matter of law. Plaintiff's declaratory judgment claim does not allege any legal basis for the claim other than FDUTPA. As the FDUTPA claim fails as a matter of law, so too does the declaratory judgment claim. Therefore, the declaratory judgment claim will be dismissed with prejudice for the same reasons the FDUTPA claim will be dismissed with prejudice.

**IV.    CONCLUSION**

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** that:

1.  Defendants' Motion to Dismiss (Doc. 6) is **GRANTED**.

2.  Plaintiff's Complaint is **DISMISSED with prejudice**.

3.  All other pending motions are denied as moot.

4.  The Clerk is directed to close this case.

**DONE** and **ORDERED** in Orlando, Florida on February 11, 2020.



CARLOS E. MENDOZA
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record